IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KIERRE GREENE,

    Plaintiff,

v.

ICON GOVERNMENT AND PUBLIC
HEALTH SOLUTIONS,

    Defendant.

Civil No. 22-2546-BAH

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Kierre Greene ("Plaintiff") brought suit against his former employer, ICON Government and Public Health Solutions ("Defendant") alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. ECF 8. Pending before the Court is Defendant's motion for summary judgment, ECF 40. Plaintiff filed an opposition, ECF 45, and Defendant filed a reply, ECF 54. All filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendant's motion for summary judgment, ECF 40, is **GRANTED**.

### I.    BACKGROUND

In late 2020, Plaintiff began working for Defendant as an IT[2] Support Analyst II. ECF 40-2, at 8; ECF 40-11, at 6. Plaintiff's job included preparing computer and technical equipment for

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[2] "IT" is a commonly used abbreviation for "information technology." *IT*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/it (last visited June 10, 2024).

new employees of Defendant, which required the installation of anti-virus software and disk encryption; processing the computer and technical equipment for employees leaving Defendant, including ensuring that their access was terminated appropriately; and resolving employee technical problems through the IT helpdesk. ECF 40-12, at 2–3 (showing Plaintiff's job description); ECF 40-2, at 22–23, 74:14–75:20 (explaining that disk encryption, anti-virus installation, and deploying equipment to new hires were all components of Plaintiff's job); *id.* at 200:20–24 (explaining that processing equipment for terminated employees was part of Plaintiff's role). Plaintiff's job was primarily remote, but he occasionally had to transport equipment from his home to Defendant's office and vice versa. ECF 40-2, at 26:12–27:2.

In June 2020, before he began working for Defendant, Plaintiff severely injured his right ankle. ECF 40-2, at 4, 21:12–22. When he started his job with Defendant, he was still completing physical therapy related to this injury. *Id.* at 26:6–14. During this time, Plaintiff attended physical therapy two or three times a week, sometimes during work hours. *Id.* at 26:22–27:5, 29:2–7. Plaintiff continued physical therapy until June 2021. ECF 45-1, at 10, 32:12–33:2. In January 2022, Plaintiff was in a car accident that reaggravated his injury. *Id.* at 10, 33:6–11; *id.* at 11, 35:23–24. Plaintiff was advised to "stay off of [his] foot" and keep it elevated, and he was again prescribed physical therapy. *Id.* at 36:1–13. His injury made walking difficult. *Id.* at 66, 257:7–9. Plaintiff again attended physical therapy two to three times a week, this time primarily during work hours. *Id.* at 12, 39:9-20.

Plaintiff's supervisor, Elliot Mattice ("Mattice"), permitted Plaintiff to work at "reduced capacity" while he recovered from his injury. ECF 45-1, at 37, 139:17–140:2. Mattice also approved all of Plaintiff's requests for leave from work for his physical therapy appointments.

ECF 45-1, at 61, 234:15–18. Plaintiff was unable to transport any equipment from his home to Defendant's office while he was injured. ECF 45-1, at 37, 140:21–141:17.

During Plaintiff's employment at Defendant, which spanned just over a year, he received two performance reviews from Mattice. ECF 40-6, at 2–6; ECF 40-7, at 2–10. In Plaintiff's 2021 year-end review, Mattice rated Plaintiff's performance as a 2.6 out of 5, a score that indicated that he "[m]et some expectations." ECF 40-7, at 3. Defendant's rating scale defines a score of "met some expectations" as indicating that "[s]ome aspects of performance met expectations but some did not. Improvement is required. Specific development actions or a performance improvement plan should be in place." *Id.* Mattice identified several discrete issues with Plaintiff's performance, taking particular notice of Plaintiff's failure to timely address IT helpdesk requests (known as "tickets"):

> [Plaintiff] had difficulty tracking progress and providing updates to the stakeholders which led to complications and delays [on a project]. . . . [Plaintiff] is still struggling with keeping track of deadlines and providing timely updates to tickets and emails. . . . [Plaintiff's] delivery of service would benefit from improvement, especially with addressing tickets, responding to requests quickly and updating/closing tickets in a timely fashion. . . . He needs to improve the timeliness on responding to tickets, providing updates to open tasks, and closing tickets immediately upon resolving the issue.

ECF 40-7, at 4–10. Mattice also noted that, though Plaintiff had since improved, he previously had to work with Plaintiff on "occasional complaints of inattentiveness, curt responses, and displeasure with services received from [IT] users." ECF 40-7, at 5.

Additional problems with Plaintiff's performance surfaced throughout his employment with Defendant. On multiple occasions, new hires reported not receiving their equipment, including laptops, by their start date. ECF 40-16, at 2–16. At one point, so many new hires had not received their required equipment by their first days that Human Resources staff ("HR") reached out to Mattice, saying that they were "involved at this point just for follow through because

3

of the numbers of calls and emails from employees and leaders about the status of equipment" for the new hires and explaining "it is a negative first impression when an employee does not have their equipment timely for their first day." ECF 40-16, at 2. Mattice responded to this email from HR staff, saying, "My apologies that this has been messy for you. We will do better." *Id.* Others expressed concern over terminated employees retaining their equipment and access to Defendant's network long after their final day, with some terminated employees reaching out themselves to HR in an attempt to return their equipment after it was not timely recovered by Plaintiff. ECF 40-20, at 2–12.

In February 2022, Mattice discovered that Plaintiff had failed to install antivirus software and complete disk encryption on more than 30 computers for new employees, leaving Defendant vulnerable to cybersecurity threats. ECF 40-3, at 21–24, 40:13–43:9; ECF 40-38, at 2–9 (showing deficient machines highlighted in green). Shortly thereafter, Mattice terminated Plaintiff on February 24, 2022. ECF 40-41, at 2–4.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 603 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A dispute is genuine if 'a reasonable jury could return

a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)). "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 603 F. Supp. 3d at 373 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

## III. ANALYSIS

The ADA prohibits employers from discriminating against otherwise "qualified individual[s] on the basis of disability." 42 U.S.C. § 12112(a)–(b). "When a plaintiff alleges that her employer unlawfully discriminated or retaliated against her in violation of the ADA, she can prove her claim through direct and indirect evidence. Otherwise, the plaintiff may proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *Laird v. Fairfax Cnty.*, 978 F.3d 887, 892 (4th Cir. 2020) (citing *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572, 577 (4th Cir. 2015)). Under the *McDonnell Douglas* framework, the plaintiff first bears the burden to establish a prima facie case for their claim. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49–50 (2003). After the plaintiff establishes their prima facie case, the burden shifts to the defendant to rebut the inference of unlawful conduct by showing that there was a legitimate, non-discriminatory purpose for their actions. *Id.* The plaintiff, however, can still succeed on their claim if they are able to prove that the defendant's allegedly legitimate purpose is pretextual. *Jacobs*, 780 F.3d at 575–76 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

Because Plaintiff here presents no direct evidence of discrimination, he must proceed under the *McDonnell Douglas* framework. *See* ECF 45, at 10 (providing the standard for a prima facie case of wrongful discharge utilized in a *McDonnell Douglas* analysis). To establish a prima facie case of wrongful discharge under the ADA, a plaintiff must show that "(1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001) (citing *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio*, 53 F.3d 55, 58 (4th Cir. 1995)).

6

Even assuming that Plaintiff was able to produce evidence to show that he was disabled at the time of his discharge and that the circumstances surrounding that discharge give rise to an inference of discrimination, Plaintiff's claim would necessarily fail because it is clear that Plaintiff was not performing his job "at a level that met his employer's legitimate expectations." *Haulbrook*, 252 F.3d at 702. "[A] showing of satisfactory performance does not require the plaintiff to show that he was a perfect or model employee," but a plaintiff still must show that their performance was "satisfactory." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019). Here, there is documentation of concerns about Plaintiff's inadequate work performance spanning nearly the entirety of his employment with Defendant. *See, e.g.*, ECF 40-7, at 5 (referencing complaints about Plaintiff's performance from early 2021); ECF 40-5, at 2 (describing deficiencies in Plaintiff's performance from "at least October 2021" through February 2022). Even before Mattice discovered the nearly three dozen computers that Plaintiff had issued to new employees without properly installing antivirus software and completing disk encryption, Mattice stated in Plaintiff's 2021 year-end review that Plaintiff was meeting only "*some* expectations." ECF 40-7, at 3 (emphasis added); *see also* ECF 40-5, at 2 (showing that the "Final Written Warning" that Mattice drafted regarding Plaintiff began with: "In reviewing your job performance, it is evident that you are not meeting all the expectations of your position as an IT Support Analyst II."). Mattice's subsequent discovery that Plaintiff had created a serious cybersecurity concern with the improper preparation of more than thirty computers to new employees only serves to further underscore that Plaintiff was not meeting Defendant's legitimate business expectations. *See Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 66 (4th Cir. 2023), *cert. denied sub nom. Liberty Univ., Inc. v. Bowes*, 144 S. Ct. 1030 (2024) (applying analogous "legitimate expectations" test in Age Discrimination in Employment Act ("ADEA") context and finding that repeated performance

7

issues demonstrated that the plaintiff had failed to meet her employer's legitimate business expectations); *see also Peterson v. Cap. One, N.A.*, Civ. No. 22-1759-BAH, 2023 WL 8529123, at *7 (D. Md. Dec. 7, 2023) (finding that the plaintiff failed to meet her employer's legitimate expectations in ADA wrongful termination context when there was repeated documentation of performance deficiencies).

Even if the Court were to find that Plaintiff was performing his job satisfactorily as a whole, Defendant has shown that there was a legitimate, non-discriminatory purpose for its termination of Plaintiff, meeting its burden at the second step of the *McDonnell Douglas* framework. *Raytheon Co.*, 540 U.S. at 49–50. Plaintiff's repeated performance issues and failure to complete disk encryption and install antivirus software on over thirty computers for new hires—a key component of his job—undoubtedly qualify as legitimate reasons for his termination. *See, e.g., Peterson*, 2023 WL 8529123, at *9 (finding that the plaintiff's repeated work failures, including a single instance in which she negligently opened a bank account based on fraudulent documents, exposing her employer to significant financial risk).

Under the *McDonnell Douglas* framework, then, Plaintiff's final chance to save his claim is to show that Defendant's so-called "legitimate" reason for terminating him was pretextual. *Jacobs*, 780 F.3d at 575–76. This Plaintiff cannot do. In an attempt to demonstrate pretext, Plaintiff first points to a single email Mattice sent in November 2021 calling Plaintiff "outstanding" and praising his work on a specific task. ECF 45, at 13. But one positive email over the course of more than a year does not prove that Defendant's concerns over Plaintiff's performance were illegitimate, especially considering that Mattice did not discover the improperly prepared computers for another two months. *See Palmer*, 72 F.4th at 66 (finding that a past

promotion did not indicate pretext sufficient to defeat summary judgment when there was ample other evidence to support legitimate reason for termination).

In Plaintiff's final attempt to show that Defendant's reasons for firing him were pretextual, he also points to messages sent by Mattice to another coworker in December 2021 that suggest that Mattice was aware that there was an issue with antivirus software and encryption on some computers at that time. ECF 45, at 16. According to Plaintiff, these messages "establish that Mattice *knew* that computers . . . were 'without antivirus or disk encryption software' . . . [and] simply 'accept[ed]'" that fact. *Id.* (emphasis and second alteration in original) (quoting ECF 45-1, at 116). But, to borrow Defendant's language, these messages are not the "smoking gun" Plaintiff paints them to be. ECF 54, at 12. Even accepting that these messages refer to the computers prepared by Plaintiff,[3] these messages do not indicate that Mattice knew that it was *Plaintiff's* failure that led to the computers being without anti-virus software or disk encryption. Plaintiff offers nothing to rebut the evidence showing that Mattice did not learn that this issue—which Mattice described as giving him "heartburn"—was caused by Plaintiff until February 2022, shortly before Mattice terminated Plaintiff. ECF 45-1, at 117; ECF 40-5, at 2 (stating that Plaintiff's role in the antivirus and disk encryption failure came to Mattice's attention on February 16, 2022). Thus, Plaintiff is unable to identify any evidence that suggests that the seemingly legitimate reason for his firing—that he left the company vulnerable to cybersecurity threats through failing to perform a key element of his job—was pretextual. As such, Plaintiff has identified no genuine dispute of material fact, and Defendant is entitled to summary judgment.

---

[3] Defendant asserts that Mattice was actually referring to an entirely separate situation in these messages. ECF 54, at 11–13. Plaintiff filed a motion seeking leave to file a surreply to dispute this assertion. ECF 55, at 1. Because the Court's analysis finds that summary judgment is warranted in favor of Defendant even assuming the messages did relate to the computers Plaintiff prepared, Plaintiff's motion for leave to file a surreply, ECF 55, is **DENIED** as moot.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment, ECF 40, is GRANTED. A separate implementing Order will issue.

Dated: June 11, 2024                                                                  /s/
                                                                                Brendan A. Hurson
                                                                                United States District Judge

10